IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

AMERICAN MODERN HOME INSURANCE
COMPANY,

      Plaintiff,

     v.                                     Case No. _____

COMMUNITY SOUTH BANK,

      Defendant.

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, American Modern Home Insurance Company ("American Modern"), by counsel, for its Complaint for Declaratory Relief, alleges as follows:

### THE PARTIES

1. American Modern is and was, at all relevant times, an insurance company licensed to do business in Tennessee.

2. Community South Bank (the "Bank") is a financial institution that lends funds to commercial borrowers in multiple states.

3. The Bank purchased the property located at 360 West Lincoln Highway, Valparaiso, Indiana (the "Property") in 2008.

### JURISDICTION AND VENUE

4. American Modern is an Ohio corporation with its principal place of business in Ohio. Pursuant to 28 U.S.C. § 1332(c), American Modern is an Ohio citizen.

5. The Bank is a Tennessee corporation with its principal place of business at 51 W. Main Street, Parsons, Tennessee. Pursuant to 28 U.S.C. § 1332(c), the Bank is a Tennessee citizen.

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as there is diversity of citizenship among the parties and the amount in controversy exceeds $75,000.

7. Venue in this District is proper pursuant to 28 U.S.C. § 1391(a) because the Bank's principal office is located in, and thus the Bank resides in, this District.

8. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, an actual controversy has arisen as to the applicability of an American Modern insurance policy with respect to the contamination at the Bank's Property.

## GENERAL ALLEGATIONS

9. American Modern issued the Bank a Blanket Mortgage Security Policy, denominated as Policy Number BM-41-7057-5241, with an initial effective date of April 1, 2010 (the "Policy"). True and accurate copies of the policy documents described herein are attached hereto as **Exhibit A**.

10. The Policy includes the following provisions, among others:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. … .
    …
    b. This insurance applies to "bodily injury" or "property damage" only if:

…

(3) Prior to the policy period, no insured listed under Paragraph 1. Section II – Who Is An Insured an no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

...

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

…

2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we received written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

       (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

…

**SECTION V – DEFINITIONS**

..

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

…

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same generally harmful conditions.

…

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

…

17. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

…

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

…

11. The Policy's Total Pollution Exclusion Endorsement provides:

This endorsement modifies insurance provided under the following:

   COMMERCIAL GENERAL LIABILITY COVERAGE PART

4

      Exclusion f. under Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced with the following:
This insurance does not apply to:

    **f. Pollution**

        (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

        (2) Any loss, cost or expense arising out of any:

           (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

           (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

…

12. In 2007, the Bank issued a loan to SAI, Inc., to facilitate SAI, Inc.'s purchase of the Property.

13. On information and belief, in 2008, after SAI failed to meet is loan obligations to the Bank, the Bank acquired title to the Property.

14. Prior to that time, the Property had been used for decades as a gasoline service station.

15. In or before May 2009, the Bank discovered indications that an underground storage tank ("UST") used to store petroleum products on the Property had been leaking.

16. On or about May 14, 2009, the Bank reported a suspected leak from a UST on the Property to the Indiana Department of Environmental Management ("IDEM").

17. Sometime in 2009, after May 14, 2009, the Bank hired an environmental consultant to, among other things, investigate potential soil and ground water contamination at the Property.

18. In 2009 the Bank became aware of soil and ground water contamination on the Property.

19. The Bank reported that contamination to the IDEM.

20. Beginning in 2009, the Bank and IDEM regularly corresponded with respect to the contamination on the Property.

21. Steve Gross, a Vice President of the Bank, corresponded with the IDEM on behalf of the Bank concerning the Property.

22. Beginning in 2009, IDEM began directing the Bank to take certain actions with respect to the Property, including but not limited to, investigating the nature and extent of contamination on the Property as well as developing a remedial action plan with respect to contamination on the Property.

23. The Bank has been cooperating with the IDEM since at least 2009, with respect to the IDEM's directives that the Bank take action to investigate and remediate soil and ground water contamination at and arising from the Property.

24. On January 11, 2010, the IDEM sent the Bank correspondence directing the Bank to take certain actions with respect to the Property. A true and accurate copy of the January 11, 2010 IDEM letter is attached hereto as **Exhibit B.**

25. In December 2012, the IDEM sent the Bank correspondence directing the Bank to take certain actions with respect to the Property. A true and accurate copy of the December 2012 IDEM letter is attached hereto as **Exhibit C**.

26. On or about May 24, 2013, the Bank, through its attorney, demanded that American Modern defend and indemnify the Bank with respect to the administrative action brought by the IDEM with respect to the Property (the "IDEM Matter").

27. American Modern has informed the Bank that it owes no duty to defend or indemnify the Bank with respect to contamination at the Property or the IDEM Matter.

28. American Modern properly denied coverage with respect to contamination at the Property and the IDEM Matter.

29. Under the express terms of the Policy, American Modern owes no duty to defend or indemnify the Bank, or otherwise provide coverage, with respect to any alleged contamination of the Property or the IDEM Matter.

## Count I – Declaratory Judgment

30. Plaintiff incorporates by reference the allegations in paragraphs 1 – 29 as if fully restated herein.

31. Insurance policies are intended to cover fortuitous losses.

32. The inception date of the Policy was April 1, 2010.

33. The contamination giving rise to the present dispute does not comprise a fortuitous loss within the scope of the Policy because the Bank was aware that such contamination had begun to occur prior to the inception date of the Policy.

34. American Modern owes no duty to defend or indemnify the Bank, or otherwise provide coverage, with respect to any contamination at the Property because the Bank was aware that such contamination had begun to occur prior to the inception date of the Policy.

35. American Modern owes no duty to defend or indemnify the Bank, or otherwise provide coverage, with respect to the IDEM Matter because the Bank was aware that the

contamination giving rise to the IDEM Matter had begun to occur prior to the inception date of the Policy.

## Count II – Declaratory Judgment

36. Plaintiff incorporates by reference the allegations in paragraphs 1 – 35 as if fully restated herein.

37. The Policy expressly precludes coverage for any bodily injury or property damage if any authorized employee knew, prior to the policy period, that the bodily injury or property damage had occurred, in whole or in part.

38. Prior to the policy period, at least one authorized employee of the Bank, including Steve Gross, knew that the contamination at the Property had occurred, in whole or in part.

39. The damages for which the Bank seeks coverage are expressly excluded by the Policy because, prior to the policy period, an authorized employee of the Bank knew that the contamination had occurred, in whole or in part.

40. American Modern owes no duty to defend or indemnify the Bank with respect to any contamination at the Property because, prior to the policy period, an authorized employee of the Bank knew that the contamination had occurred, in whole or in part.

## Count III – Declaratory Judgment

41. Plaintiff incorporates by reference the allegations in paragraphs 1 – 40 as if fully restated herein.

42. The contamination at the Property consists of "pollutants" within the meaning of the Policy.

43. The damages for which the Bank seeks coverage are expressly excluded by the Total Pollution Exclusion in the Policy.

44. American Modern owes no duty to defend or indemnify the Bank, or otherwise provide coverage, with respect to any contamination at the Property because the damages for which the Bank seeks coverage are excluded by the Total Pollution Exclusion in the Policy.

### Count IV – Declaratory Judgment

45. Plaintiff incorporates by reference the allegations in paragraphs 1 – 44 as if fully restated herein.

46. The IDEM Matter is not a "suit" within the meaning of the Policy.

47. The damages for which the Bank seeks coverage are not covered by the Policy because the IDEM Matter is not a "suit" within the meaning of the Policy.

48. American Modern owes no duty to defend or indemnify the Bank, or otherwise provide coverage, with respect to any contamination at the Property because the IDEM Matter is not a "suit" within the meaning of the Policy.

### Count V – Declaratory Judgment

49. Plaintiff incorporates by reference the allegations in paragraphs 1 – 48 as if fully restated herein.

50. The Policy obligates the Bank to timely notify American Modern of any occurrence or suit.

51. Such timely notice is a condition precedent to coverage under the Policy.

52. The Bank failed to timely notify American Modern of the contamination at the Property as required by the Policy.

53. The Bank failed to timely notify American Modern of the IDEM Matter as required by the Policy.

54. The damages for which the Bank seeks coverage are excluded by the Policy because the Bank failed to timely notify American Modern of contamination at the Property and the IDEM Matter.

55. American Modern owes no duty to defend or indemnify the Bank, or otherwise provide coverage, with respect to any contamination at the Property because the Bank failed to timely notify American Modern of contamination at the Property and the IDEM Matter.

**WHEREFORE**, Plaintiff, American Modern Home Insurance Company, prays for a declaratory judgment, determining and declaring as follows:

a) The Policy issued by American Modern to the Bank does not afford coverage (defense or indemnity) for any costs, expenses, or damages arising from contamination at the Property;

b) The Policy issued by American Modern to the Bank does not afford coverage (defense or indemnity) for any costs, expenses, or damages arising from the IDEM Matter;

c) American Modern owes no duty to defend or indemnify the Bank, or otherwise provide coverage, with respect to any contamination at the Property;

d) American Modern owes no duty to defend or indemnify the Bank, or otherwise provide coverage, with respect to the IDEM Matter;

e) Awarding American Modern its costs and attorney's fees in this action; and

f) Such other and further relief as the Court may deem just and equitable.

Respectfully submitted,

TAYLOR, PIGUE, MARCHETTI & BLAIR, PLLC

/s/L. Gino Marchetti, Jre

L. Gino Marchetti, Jr. BPR# 005562
Keith W. Blair BPR# 015366
2908 Poston Avenue
Nashville, TN 37203
(615) 320-3225
(615) 320-3244
gmarchetti@tpmblaw.com
kblair@tpmblaw.com


Counsel – pro hac pending


*Attorneys for Plaintiff*